# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT CINCINNATI

GENE KAAZ,

                     Petitioner,            :    Case No. 1:18-cv-865

       - vs -                                District Judge Douglas R. Cole
                                         Magistrate Judge Michael R. Merz

CHAE HARRIS, Warden,
   Lebanon Correctional Institution,

                                    :

                    Respondent.

---

# REPORT AND RECOMMENDATIONS

---

       This habeas corpus case was brought by Petitioner Gene Kaaz with the assistance of counsel to obtain relief from his conviction in the Clinton County Court of Common Pleas on charges of rape, sexual battery, unlawful sexual conduct with a minor, and importuning (Petition, ECF No. 1, PageID 1). Contemporaneously with filing the Petition, Kaaz filed a Memorandum in Support (ECF No. 3). On order of Magistrate Judge Karen Litkovitz, Respondent filed the State Court Record (ECF No. 8) and a Return of Writ (ECF No. 9). Petitioner then filed a Reply (ECF No. 10), making the case ripe for decision.

       The Magistrate Judge reference of the case was recently transferred to the undersigned to help balance the Magistrate Judge workload in the District.

**Litigation History**

On June 22, 2015, a Clinton County, Ohio, grand jury indicted Kaaz on five counts of Rape in violation of Ohio Revised Code § 2907.02(A)(1)(b))(Counts 1, 2, 3, 4) and Ohio Revised Code § 2907.02(A)(2) (Count11); three counts of Sexual Battery in violation of Ohio Revised Code § 2907.03(A)(5) (Counts 5, 8, 12); three counts of Unlawful Sexual Conduct with a Minor in violation of Ohio Revised Code § 2907.04(A))(Count 6, 9, 13); and three counts of Importuning in violation of Ohio Revised Code § 2907.07(B)(1))(Counts 7, 10, 14)(Indictment, State Court Record, ECF No. 8, Ex. 1). A trial jury found him guilty on all counts and he was sentenced to an aggregate term of imprisonment of thirty years to life.

Represented by new counsel, Kaaz appealed to the Ohio Court of Appeals for the Twelfth District which affirmed the convictions and sentence. *State v. Kaaz,* No. CA2016-05-010, 2017-Ohio-5669 (Ohio App. 12th Dist. July 3, 2017), appellate jurisdiction declined, 2018-Ohio-723 (Feb. 28, 2018). On December 6, 2018, Kaaz filed his Petition here, pleading the following Grounds for Relief:

> **Ground One**: Violation of Due Process based on insufficient evidence when the state failed to present evidence based on distinct acts for each count, but instead presented evidence based on inferences/estimates.
>
> **Supporting Facts**: Kaaz was indicted in a 14 count indictment. However, at trial there was no specific testimony that could be linked to at least 10 of those counts. Courts cannot uphold multiple convictions when they are unable to discern the evidence that supports each individual conviction. Because the state indicted Kaaz in a sweeping 14 count indictment, it assumed to responsibility [sic] to link specific and distinct evidence to each and every count against Kaaz. Because it failed to do so. Kaaz's convictions are supported by insufficient evidence and his convictions and sentences are in violation of due process.

**Ground Two**: Violation of due process by prosecutor engaging in prejudicial prosecutorial misconduct.

**Supporting Facts:** The prosecutor engaged in prosecutorial misconduct by disparaging Kaaz by referring to him as a "predator" and a "pedophile" in opening statements. Further, the prosecutor engaged in misconduct by intentionally and gratuitously telling the jury that Kaaz was willing to take a plea deal, knowing full well that such evidence was inadmissible and highly prejudicial. These instances of misconduct were flagrant and made in bad faith, and they deprived Kaaz of his right to due process and a fair trial.

**Ground Three**: Kaaz's convictions are contrary to the manifest weight of the evidence presented at trial and he is actually innocent of the charges against him.

**Supporting Facts:** Kaaz's imprisonment for crimes he did not commit, and [of] which he is actually innocent, constitutes a fundamental miscarriage of justice in violation of due process and the 14th Amendment.

**Ground Four**: The cumulative effect or errors committed at Kaaz's trial deprived him of his right to fair trial and due process

**Supporting Facts:** Even if each error individually did not deprive Kaaz of due process and his right to a fair trial, the cumulative effect of errors deprived him of due process and his right to a fair trial. The individual errors included: 1) insufficient evidence due to estimate and inferences; 2) prosecutorial misconduct; 3) admission of other bad act evidence; 4) the prosecutor telling the jury that he was willing to enter into a plea agreement; 5) permitting a social worker vouch the credibility of a witness; 6) the admission of prejudicial hearsay evidence admitted for the purpose of bolstering the credibility of another witness.

(Petition, ECF No. 1, PageID 5-10).

# Analysis

**Ground One:  Insufficient Evidence to Convict**

### The Parties' Positions

In his First Ground for Relief, Kaaz claims the State presented insufficient evidence to convict him because "the state failed to present evidence based on distinct acts for each count, but instead presented evidence based on inferences/estimates."  (ECF No. 1, PageID 5.)

In his Memorandum in Support, Kaaz argues

> Numerous charges cannot be made out through estimation and inference. Instead, if prosecutors seek multiple charges against a defendant, they must link those multiple charges to multiple identifiable offenses. Due process requires this minimal step. Courts cannot uphold multiple convictions when they are unable to discern the evidence that supports each individual conviction.

(Memorandum, ECF No. 3, PageID 25, quoting *Valentine v. Konteh*, 395 F.3d 626, 637 (6th Cir. 2005)).  The Memorandum then specifies the claim:

> With the exception of Counts 11, 12, 13, and 14, which are arguably attached to the March 15, 2015 allegation. J.R.-1[1] did not testify to any specific details that can be attributed to any of the other specific counts. She only testified in generalities and vague and uncertain time frames. J.R.-1 testified that the abuse happened in her "bedroom, his room, the bathroom, and outside the house, the garage . . . maybe even the game room." "Sometimes it was once a week, once every two weeks.

---

[1] Because Kaaz's spouse Cindy had three children with the same initials, Kaaz refers to the victim as J.R.-1 (Memorandum, ECF No. 3, PageID 18, n.1).  She is referred to in the court of appeals' decision simply as J.R.  Except when quoting Kaaz's filings, the Magistrate Judge will use the abbreviation chosen by the state court.

*Id.* Kaaz also cites two cases from the Ohio Eighth District Court of Appeals, *State v. Hemphill*, 2005-Ohio-3726 (Ohio App. 8th Dist. July 21, 2005), and *State v. Hilton*, 2008-Ohio-3010 (Ohio App. 8th Dist. June 12, 2008).

In the Return of Writ, Respondent distinguishes *Valentine* as a sufficiency-of-the-charging-document precedent as opposed to a sufficiency-of-the-evidence case. Respondent further notes that the counts of the indictment in this case are not "carbon copies" of one another as the counts were in *Valentine*, but charge different specific time periods. Numerous federal courts have upheld convictions in child sexual abuse cases, the Return argues, even when the time period charged is fairly lengthy.

In his Reply Kaaz notes that while *Valentine* is not a Supreme Court case, the Sixth Circuit in *Valentine* relied on *Russell v. United States,* 369 U.S. 749 (1962). He summarizes his complaint about the vagueness of the proof by claiming

> [B]ased on the alleged victim's vague and decidedly nonspecific testimony, no rational trier of fact could have found that he committed four separate rapes in each of the four years between September 4, 2009 and September 3, 2013, and an act of Sexual Battery, an act of Unlawful Sexual Conduct, and an act of Importuning in each of the two years between September 4, 2013 and March 1, 2015.

(Reply, ECF No. 10, PageID 1292.)

**The Magistrate Judge's Analysis**

An allegation that a verdict was entered upon insufficient evidence states a claim under the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Jackson v. Virginia,* 443 U.S. 307 (1979); *In re Winship*, 397 U.S. 358 (1970); *Johnson v. Coyle*, 200 F.3d 987, 991 (6th Cir. 2000); *Bagby v. Sowders*, 894 F.2d 792, 794 (6th Cir. 1990)(*en banc*). In order

for a conviction to be constitutionally sound, every element of the crime must be proved beyond a

reasonable doubt. *In re Winship*, 397 U.S. at 364.

> [T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt . . . . This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence and to draw reasonable inferences from basic facts to ultimate facts.

*Jackson*, 443 U.S. at 319; *United States v. Paige,* 470 F.3d 603, 608 (6ᵗʰ Cir. 2006); *United States*

*v. Somerset*, 2007 U.S. Dist. LEXIS 76699 (S.D. Ohio Oct. 12, 2007). This rule was recognized

in Ohio law at *State v. Jenks*, 61 Ohio St. 3d 259, 273 (1991), citing *Jackson*, *supra*. Of course, it

is state law which determines the elements of offenses, but once the state has adopted the elements,

it must then prove each of them beyond a reasonable doubt. *In re Winship*, 397 U.S. at 364.

In cases such as Petitioner's challenging the sufficiency of the evidence and filed after

enactment of the Antiterrorism and Effective Death Penalty Act of 1996 (Pub. L. No 104-132, 110

Stat. 1214)(the "AEDPA"), two levels of deference to state decisions are required:

> In an appeal from a denial of habeas relief, in which a petitioner challenges the constitutional sufficiency of the evidence used to convict him, we are thus bound by two layers of deference to groups who might view facts differently than we would. First, as in all sufficiency-of-the-evidence challenges, we must determine whether, viewing the trial testimony and exhibits in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). In doing so, we do not reweigh the evidence, re-evaluate the credibility of witnesses, or substitute our judgment for that of the jury. See *United States v. Hilliard*, 11 F.3d 618, 620 (6th Cir. 1993). Thus, even though we might have not voted to convict a defendant had we participated in jury deliberations, we must uphold the jury verdict if any rational trier of fact could have found the defendant guilty after resolving all disputes in favor of the prosecution. Second, even were we to conclude that a rational trier of fact could not have found a petitioner guilty beyond a reasonable

> doubt, on habeas review, we must still defer to the state appellate
> court's sufficiency determination as long as it is not unreasonable.
> See 28 U.S.C. § 2254(d)(2).

*Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009).

In a sufficiency of the evidence habeas corpus case, deference should be given to the trier-of-fact's verdict under *Jackson* and then to the appellate court's consideration of that verdict, as commanded by AEDPA. *Tucker v. Palmer*, 541 F.3d 652, 656 (6th Cir. 2008), citing *Parker v. Renico*, 506 F.3d 444, 448 (2007); *accord Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011)(*en banc*); *Parker v. Matthews*, 567 U.S. 37, 43 (2012). Notably, "a court may sustain a conviction based upon nothing more than circumstantial evidence." *Stewart v. Wolfenbarger,* 595 F.3d 647, 656 (6th Cir. 2010).

> We have made clear that *Jackson* claims face a high bar in federal
> habeas proceedings because they are subject to two layers of judicial
> deference. First, on direct appeal, "it is the responsibility of the jury
> -- not the court -- to decide what conclusions should be drawn from
> evidence admitted at trial. A reviewing court may set aside the jury's
> verdict on the ground of insufficient evidence only if no rational trier
> of fact could have agreed with the jury." *Cavazos v. Smith*, 565 U.S.
> 1, [2], 132 S.Ct. 2, 181 L.Ed.2d 311, 313 (2011) (*per curiam*). And
> second, on habeas review, "a federal court may not overturn a state
> court decision rejecting a sufficiency of the evidence challenge
> simply because the federal court disagrees with the state court. The
> federal court instead may do so only if the state court decision was
> 'objectively unreasonable.'" *Ibid*. (quoting *Renico v. Lett*, 559 U.S.
> [766], [773], 130 S.Ct. 1855, 176 L.Ed.2d 678 (2010)).

*Coleman v. Johnson*, 566 U.S. 650, 651, (2012)(*per curiam*); *Parker v. Matthews*, 567 U.S. 37, 43 (2012) (*per curiam*). The federal courts do not make credibility determinations in reviewing sufficiency of the evidence claims. *Brooks v. Tennessee,* 626 F.3d 878, 887 (6th Cir. 2010).

When a state court decides on the merits a federal constitutional claim later presented to a federal habeas court, the federal court must defer to the state court decision unless that decision is contrary to or an objectively unreasonable application of clearly established precedent of the

United States Supreme Court. 28 U.S.C. § 2254(d)(1); *Harrington v. Richter*, 562 U.S. 86, 100 (2011); *Brown v. Payton*, 544 U.S. 133, 140 (2005); *Bell v. Cone*, 535 U.S. 685, 693-94 (2002); *Williams (Terry) v. Taylor,* 529 U.S. 362, 379 (2000). Deference is also due under 28 U.S.C. § 2254(d)(2) unless the state court decision was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

In this case the federal constitutional question of the sufficiency of the evidence was presented to the Ohio Twelfth District Court of Appeals and decided by that court adversely to Kaaz's claim. That court's decision is not contrary to relevant Supreme Court precedent; it employed the *Jackson* standard as it is embodied in Ohio precedent. *Kaaz*, 2017-Ohio-5669, ¶9, citing *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

Furthermore, Kaaz does not assert the Twelfth District misquoted the relevant evidence presented at trial which was as follows:

A. Trial Testimony

1. Child Protection Unit Caseworker

[*P14] After reviewing the record, we find that Kaaz's convictions are all supported by sufficient evidence and were not otherwise rendered against the manifest weight of the evidence. During Kaaz's trial, the state presented testimony from several witnesses. The first was an investigative caseworker with the Clinton County Department of Job and Family Services, Child Protection Unit. The caseworker testified that he investigated an allegation that Kaaz was allowing children to smoke marijuana and drink alcohol, and providing them with such. When Kaaz's wife admitted that there was marijuana in the home, the caseworker continued his investigation. As part of the investigation, the caseworker interviewed J.R.

[*P15] J.R. confirmed that she consumed alcohol and marijuana provided to her by Kaaz. J.R., who was confined in a detention center at the time of her interview, admitted that she had been drinking from a young age. The caseworker learned that J.R. had been in trouble for unruliness and kicking a police car, and that she engaged in self-harm through cutting herself. J.R. became more

8

comfortable with the caseworker during their discussion, and ultimately shared that Kaaz had sexually abused her. The caseworker scheduled a follow-up interview with J.R., and contacted police regarding the allegations.

[*P16] During the follow-up interview with the caseworker and his supervisor, J.R. provided additional information regarding the sexual abuse she suffered from Kaaz. J.R. told the caseworker that the sexual abuse, which included vaginal intercourse, occurred on the chair in Kaaz's garage. J.R. also told the caseworker and supervisor that Kaaz would sometimes "pull out and ejaculate on the chair" or ejaculate inside of her if she was menstruating at the time. The caseworker and his supervisor gave this information to police.

### 2. Child Protection Unit Supervisor

[*P17] The state next presented testimony from the caseworker's supervisor, who is the investigative supervisor of the Child Protection Unit. The supervisor testified that when she and the caseworker interviewed J.R., J.R. indicated that she suffered sexual abuse at the hands of Kaaz since the age of nine. The sexual abuse would occur in the garage, on Kaaz's bed, and in Kaaz's bathroom. The supervisor then testified that she and the caseworker reacted to J.R.'s statement by informing police, specific to the sexual abuse occurring on the chair in the garage, for investigatory purposes.

[*P18] The supervisor also testified that she interviewed Kaaz, and that he denied giving J.R. alcohol or marijuana, but did state that he had lain in bed with J.R. However, Kaaz told the supervisor that nothing sexual occurred between himself and J.R. and that J.R. was a troubled child. When the supervisor specifically advised Kaaz of the allegations J.R. made, Kaaz "advised that he didn't want to talk about that any longer." The supervisor testified that when she asked Kaaz if there would be any reason his and J.R.'s DNA would be found on the chair in the garage, "his eyes got bigger. He sat back further and advised that he no longer wanted to talk, he wanted an attorney."

### 3. Detective

[*P19] The state also presented testimony from a Wilmington Police Department detective who was contacted by the supervisor and caseworker regarding J.R.'s allegations of sexual abuse against Kaaz. The detective testified that once he was given information

about the chair in Kaaz's garage, he obtained a search warrant and seized the chair. The detective described the chair as "nasty," and "dirty." Together with his supervisor, the detective moved the chair to the police station's evidence room where it was later analyzed by a special agent of the Ohio Bureau of Criminal Investigations ("BCI"). The detective testified that after the special agent found the presence of seminal fluid and other stains on the chair, he secured another search warrant to obtain DNA samples from Kaaz and the victim, and that police collected the samples from both.

## 4. BCI Agent

[*P20] The state next presented testimony from the BCI agent who took DNA samples from the chair. The agent testified that he performed a forensic sweep on the chair, and that he employed a black light to determine if the chair contained saliva, urine, or semen. When the light indicated several stains, the agent cut the fabric on the chair and did a preliminary test on the stained areas, as well as the chair's inside cushion. The preliminary tests indicated that the stains on the chair and the cushion contained seminal fluid. The agent then sent the samples to the laboratory for DNA testing.

## 5. Forensic Scientists

[*P21] The state called multiple BCI forensic scientists, who testified about testing the samples. The scientists confirmed that the samples tested positive for semen, and that DNA found on the chair belonged to Kaaz and J.R.

## 6. Mayerson Forensic Interviewer

[*P22] The state then called a social worker and forensic interviewer who is employed at the Mayerson Center for Safe and Healthy Children. The interviewer testified that her role at the Center is to "assess if something has happened to a child or if they have witnessed significant violence. Then my role is to assess the need for medical care which includes like physical medical care, but also mental health care." The interviewer testified that when she spoke to J.R., J.R. provided "a lot of detail" regarding Kaaz's sexual abuse. Based on the information regarding the sexual abuse, the interviewer determined that J.R. needed a medical consultation as well as ongoing mental health therapy.

### 7. J.R.'s Brother

[*P23] The state then began presenting evidence from J.R.'s family about Kaaz and his actions in the years leading up to the sexual abuse allegations. In this regard, J.R.'s brother was the first to testify. He disclosed that Kaaz allowed him to drink alcohol when he was as young as 12, and that he and Kaaz drank alcohol together on multiple occasions. J.R.'s brother also testified that Kaaz began giving him marijuana in seventh grade, and that Kaaz provided him marijuana on multiple occasions. According to J.R.'s brother, Kaaz drank heavily, and when drunk, he would make "dirty comments," be "more touchy," and act "perverted * * * he would talk about parts of a girl or a guy." Kaaz also showed nude photographs to J.R.'s brother.

[*P24] J.R.'s brother testified that he noticed that Kaaz was more "touchy feely" with J.R. than he was with the other siblings, and that Kaaz would lie with J.R. on the couch, on his bed, or go out to the garage with J.R. Kaaz would also massage J.R. while she was sitting on the couch, and J.R.'s brother saw Kaaz and J.R. in Kaaz's bed together. J.R.'s brother testified that he would find Kaaz and J.R. together in bed at least once a week, and that Kaaz and J.R. would spend hours at a time in the garage with the door closed and locked. Kaaz also told J.R.'s brother to "go away" when Kaaz wanted to spend time alone in the garage with J.R.

[*P25] J.R.'s brother testified that J.R. confided in him and their older sister that Kaaz had "sexual conduct" with her and that she felt that the conduct was inappropriate but did not know how to stop it. J.R. told her brother that the sexual abuse had started when she was nine years old. J.R.'s brother testified his reaction to what J.R. told him was to be "scared and threatened," and thus he did not tell anyone until much later.

### 8. J.R.

[*P26] J.R. then testified about the sexual activity that had taken place over the last several years. J.R. testified that when she was younger, around eight or nine years old, she felt ill and lay in Kaaz's bed to be cared for. Kaaz gave her whiskey to drink and subsequently kissed her. Kaaz then put his penis in J.R.'s mouth and later put his mouth on her vagina. J.R. testified that she ran into the bathroom and vomited after Kaaz finished. When J.R. was ten years

old, Kaaz was giving her beer, and by 11, he was giving her marijuana.

[*P27] J.R. testified that Kaaz's demeanor would change often, and that alcohol was often a part of her sexual abuse. Kaaz would ask J.R. to massage him, and then take her to the garage where he would engage in vaginal intercourse with her after giving her shots of alcohol to drink. J.R. also testified that Kaaz would engage in oral and anal sex with her. The sexual conduct would occur more than once a week, and Kaaz never went more than a month without engaging in sexual conduct with J.R. J.R. also confirmed her brother's testimony regarding his seeing Kaaz and her together in bed, and testified that before her brother came to the door, she and Kaaz had intercourse.

[*P28] J.R. also testified that when she would tell Kaaz not to touch her, he would tell her that he could make her feel better, that she acted out when she did not have "it," and that they could make each other feel good. Kaaz also told J.R. not to tell anyone about the sexual conduct or they would both get into trouble. However, J.R. did tell her sister and brother, just as her brother testified to earlier in the trial.


9. J.R.'s Older Sister

[*P29] J.R., who is the youngest of the four children, had two sisters. The older sister testified that Kaaz began providing her alcohol when she was 11 or 12, and that she would get drunk on the alcohol Kaaz provided her. Kaaz also provide her marijuana, which they smoked together. J.R.'s sister also testified that Kaaz would talk to her about sexual intercourse, specifically as to what positions she should use with her partners. Kaaz also showed J.R.'s sister pictures of genitals and described what areas to touch for pleasure. Kaaz also demonstrated sexual positions with J.R.'s sister by grabbing her hips and showing her how to move on top of him.

[*P30] J.R.'s sister also testified that when she and Kaaz were talking about oral sex, Kaaz licked her bare leg on her inner thigh. Kaaz also kissed her on the lips while lying on the floor with her. He also kissed her on the back of her ear, moving down her neck and across the front of her upper chest. J.R.'s sister later testified that one night, she woke up and Kaaz was trying to put his hand up her shirt. J.R.'s sister confirmed during her testimony that J.R. told her and their brother about Kaaz's sexual abuse. J.R. also told her sister that she and Kaaz had sexual intercourse.

### 10. J.R.'s Other Sister

[*P31] The younger of J.R.'s sisters testified that Kaaz offered her alcohol and marijuana and pressured her into using marijuana with him. He also showed her images of nude women, which the sister found "disgusting." The sister also testified that she saw Kaaz and J.R. go to the garage together, "a couple times a week," and that the garage door was then shut and locked. Because of what occurred in the household, the sister testified that she would not go into the garage herself.

### 11. Kaaz

[*P32] Kaaz testified in his own defense, and denied any sexual conduct with J.R. On cross-examination, he denied every allegation J.R. and her siblings testified to, including providing marijuana for the children, touching any of them inappropriately, or having any sexual contact with them. Kaaz indicated that the children's testimony was fabricated and that the children were "liars."

### 12. Kaaz's Son

[*P33] Kaaz's son from a previous relationship also testified in his defense. The son testified that he had never seen any sexual contact between Kaaz and J.R. However, Kaaz's son also testified that he no longer lived with Kaaz because Kaaz gave him alcohol and marijuana when he was in the fifth grade, and his mother then made him reside with her.

*Id.*

Apparently Kaaz does not contest proof of such elements as J.R.'s age, to wit that she was born, as the Indictment alleges, on September 4, 2000. The sexual conduct is alleged to have occurred in consecutive one-year periods between September 4, 2009, and March 1, 2015 (Counts 1 to 10) and then on or about a specific date, March 15, 2015 (Count 11-14).[2] Thus, the victim

---

[2] While Kaaz does not expressly concede that Count 11-14 are specific enough, he makes no argument that they are not. Plainly the allegation that the sexual misconduct in those counts happened "on or about" March 15, 2015, is adequate.

would have been under the age of thirteen until September 4, 2013, as required to prove the age element of Counts 1-4.

Kaaz also does not dispute that he was J.R.'s stepparent (Counts 5 and 8). He does not dispute that during the period September 4, 2013-2014, he was over eighteen and J.R. was thirteen (Count 6). He does not dispute that during the same period and the period September 4, 2014, to March 1, 2015, he was more than four years older than J.R. (Counts 7 and 10.) He does not dispute that he was more than ten years older than J.R. during the period September 4, 2014-March 1, 2015 (Count 9). Rather, what he disputes is that there was any sexual conduct between him and J.R. at any time between September 4, 2009, and March 1, 2015.

To prove that the sexual misconduct occurred, the State produced the direct testimony of J.R. to the behavior, her prior consistent statements to older siblings that the misconduct had occurred; the corroborating testimony from siblings about alcohol and marijuana in the home and its use (which Kaaz admitted at trial) and time spent by J.R. and Kaaz in the garage; and the forensic evidence of Kaaz's sperm on the chair in the garage, along with J.R.'s DNA. Kaaz attempted to explain his sperm on the chair by saying he and his wife had sex in the chair in the garage. He also admitted some of the children were smoking marijuana and drinking alcohol in the home with his knowledge and that he had developed a serious drinking problem. There certainly was sufficient evidence if believed to prove every count in the indictment, some of them many times over.

Kaaz argues that he was convicted by "estimates" and "inferences." However, the State did not indict Kaaz for multiple rapes of J.R. the year she was nine, for example. It indicted him for one count of rape of a nine-year-old child during the year she was nine and she testified it happened multiple times that year. She gave testimony to particular places around the house where

it happened (including the chair in the garage), but she did not give particular dates.

In *Valentine*, the defendant was convicted of twenty "carbon-copy" counts of child rape and twenty similar counts of felonious sexual penetration against his eight-year-old stepdaughter, and was sentenced to forty consecutive life sentences. The district court had granted habeas corpus relief on all charges on grounds that the indictment was not specific enough to provide Valentine with Double Jeopardy protection should he be charged again in exactly the same words. The Sixth Circuit affirmed on only thirty-eight of the counts, leaving Valentine with two consecutive life sentences on an indictment that charged all of the offenses occurred between March 1, 1995, and January 16, 1996. The court found the indictment was sufficiently specific to charge one count of rape and one count of felonious sexual penetration during that period. In contrast to the indictment in *Valentine*, the indictment here charges offenses occurring during different periods of time. Having been convicted once of raping his stepdaughter during the period September 4, 2009, to September 3, 2010, Kaaz can never again be charged with that offense.

As Respondent points out, *Valentine* is not a sufficiency of the evidence case, but rather about the due process requirement that a defendant be given sufficient notice of the alleged offense so that he can defend himself in the current case and plead double jeopardy if charged again. As Petitioner acknowledges, *Valentine* relied on *Russell v. United States,* 369 U.S. 749 (1962), the case in which the Supreme Court put forth the criteria by which the sufficiency of an indictment is to be measured:

> These criteria are, first, whether the indictment "contains the elements of the offense intended to be charged, 'and sufficiently apprises the defendant of what he must be prepared to meet,'" and, secondly, "'in case any other proceedings are taken against him for a similar offense whether the record shows with accuracy to what extent he may plead a former acquittal or conviction.'"

*Valentine*, 395 F. 3d at 631, quoting *Russell*, 369 U.S. at 763-64.  Kaaz raised no objections to the specificity of the indictment before trial and appears to have had no difficulty defending himself at trial.  In *Valentine* the Sixth Circuit found "the indictment violated Valentine's rights to notice and his right to be protected from double jeopardy," *Id.*  It did not hold Valentine had been convicted on insufficient evidence.

As to the one-year periods of time alleged in Counts One through Ten, federal courts have upheld the sufficiency of pleading that the offense took place within relatively large chunks of time.  *Isaac v. Grider*, 211 F.3d 1269, 2000 WL 571959 at *5 (6th Cir. 2000)(four months); *Madden v. Tate*, 830 F.2d 194, 1987 WL 44909, at *1-*3 (6th Cir. 1987) (six months); see also *Fawcett v. Bablitch*, 962 F.2d 617, 618-19 (7th Cir. 1992) (six months); *Hunter v. New Mexico*, 916 F.2d 595, 600 (10th Cir. 1990) (three years); *Parks v. Hargett*, 1999 U.S. App. LEXIS 5133, 1999 WL 157431, at *4 (10th Cir. 1999) (seventeen months).  More specificity might be necessary to give fair notice if, for example, a defendant had an alibi for part of the time charged, but Kaaz admits being in and around the places where J.R. lived during the times when the offenses occurred.  *Valentine* itself approves a period of almost a year.

In this case the evidence is sufficient under the *Jackson* standard and the indictment is sufficient under *Russell*.  Therefore, the Twelfth District's decision on the sufficiency of the evidence assignment of error is not an unreasonable application of the relevant Supreme Court authority and is entitled to deference under AEDPA.  Ground One should be dismissed with prejudice.


**Ground Two:  Prosecutorial Misconduct**


In his Second Ground for Relief, Kaaz claims he was denied a fair trial by the prosecutor's labeling him as a predator and a pedophile during opening statements and implying to the jury Kaaz

was willing to accept a plea bargain.

The Twelfth Disdtrict Court of Appeals decided this claim on the merit as follows:

### III. Prosecutorial Misconduct

[*P49] Assignment of Error No. 3:

[*P50] THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANT-APPELLANT AS HE WAS DENIED DUE PROCESS AND A FAIR TRIAL WHEN THE TRIAL COURT ALLOWED THE PROSECUTING ATTORNEY TO ENGAGE IN MISCONDUCT.

[*P51] Kaaz argues in his third assignment of error that the prosecutor engaged in misconduct during his trial.

[*P52] For a conviction to be reversed on the basis of prosecutorial misconduct, a defendant must prove the prosecutor's acts were improper and that they prejudicially affected the defendant's substantial rights. *State v. Elmore,* 111 Ohio St.3d 515, 2006-Ohio-6207, ¶ 62. To demonstrate prejudice, a defendant must show that the improper remarks or questions were so prejudicial that the outcome of the trial would clearly have been otherwise had they not occurred. *State v. Jones*, 12th Dist. Butler No. CA2006-11-298, 2008-Ohio-865, ¶ 21.

[*P53] The focus of "an inquiry into allegations of prosecutorial misconduct is upon the fairness of the trial, not upon culpability of the prosecutor." *State v. Gray*, 12th Dist. Butler No. CA2011-09-176, 2012-Ohio-4769, ¶ 57. As such, prosecutorial misconduct "is not grounds for error unless the defendant has been denied a fair trial." *State v. Olvera-Guillen,* 12th Dist. Butler No. CA2007-05-118, 2008-Ohio-5416, ¶ 27.

[*P54] During Kaaz's cross-examination, the state questioned Kaaz about the allegations of sexual abuse. At one point, the prosecutor stated, "speaking of phone calls, you advised your parents you'd take a plea deal in this case." Kaaz's counsel immediately objected, and the trial court sustained the objection. Kaaz did not answer or address the state's question at all. The transcript indicates that a side-bar was held, which was not transcribed in the record. Even so, the transcript later indicates that the state and Kaaz's defense counsel discussed with the trial court whether the question would require a mistrial.

[*P55] The state indicated that the reason it sought to admit the conversation between Kaaz and his parents when he mentioned the plea deal was to provide context for Kaaz's later statement to his parents that he would "beat" the system and receive probation rather than a prison sentence. There were no actual plea negotiations between the state and Kaaz referenced in the prosecutor's question, and Kaaz was merely speaking to his parents about his plans to manipulate the justice system. The state's attempt to question Kaaz regarding his conversation with his parents was not made to indicate a failed attempt at plea negotiations, nor was it an attempt to indicate that Kaaz expressed any guilt.

[*P56] Although the state later indicated why it was posing the question and the issue was cured by the defense's objection, the inference of Kaaz's willingness to plead — regardless of his reason for doing so — was not necessary to prove the charges facing Kaaz, and any gains hoped to be made by the state that Kaaz was attempting to avoid a prison sentence pale in comparison to the victim's testimony and corroborating DNA evidence. Simply stated, it was unnecessary for the state to venture into this territory, yet, it is clear Kaaz was not prejudiced to any extent that denied him a fair trial.

[*P57] Aware of the state's intent, this question did not rise to the level of prosecutorial misconduct. While a plea deal would rarely be admissible at trial, the prosecution had a good faith basis for attempting to ask the question. *State v. Gillard,* 40 Ohio St.3d 226, 231 (1988)[(abrogated on other grounds by *State v. McGuire*, 80 Ohio St.3d 390, 402 (1997))] ("a cross-examiner may ask a question if the examiner has a good-faith belief that a factual predicate for the question exists"). Furthermore, the trial court specifically instructed the jury that statements made by the attorneys were not evidence and should not be considered as evidence. Given this instruction and the immediate sustaining of Kaaz's objection to the question, the jury would not have considered the prosecutor's question.

[*P58] Kaaz also claims prosecutorial misconduct because the state referred to him during its opening statement as a "pedophile" and a "predator." While Kaaz argues that this name-calling was perpetuated to damage his character and prejudice him in the eyes of the jury, we disagree. The context of the statements, as indicated in the trial transcript, indicate that the state was telling the jury what it believed the evidence would prove, specific to the charges against Kaaz. Specifically, the full statement was, "the evidence in this case will prove beyond a reasonable doubt that defendant is a predator

and a pedophile and that over the course of the last seven years he has repeatedly sexually molested and raped" J.R.

[*P59] The terms "predator" and "pedophile" are descriptive labels that are inherently connected to sexual perpetrators and are arguably used to stigmatize those labeled as such. While the statement was perhaps inartful or needless, it did not rise to the level of prosecutorial misconduct where the statement was only made in one instance by the state, not repeatedly, and was specific to what the evidence was expected to show. The ultimate decision as to whether Kaaz was guilty or innocent of specific conduct was left to the jury, and no other incidents indicate in the record that the state was attempting to stigmatize Kaaz unfairly.

[*P60] Nor is there any indication in the record that the two words used in opening statements prejudiced Kaaz or rendered his four-day trial unfair. This is especially true where there was overwhelming evidence of Kaaz's guilt, including testimony from the victim and DNA evidence that corroborated her testimony. As such, and having found no prosecutorial misconduct, we overrule Kaaz's third assignment of error.

*Kaaz*, 2017-Ohio-5669.

Because the state court decided this claim on the merits, the question for this Court is whether that decision was contrary to or an unreasonable application of United States Supreme Court precedent. *Harrington, supra*.

The Sixth Circuit has held that prosecutorial misconduct justifies federal habeas relief only if it "so infected the trial with unfairness as to make the resulting conviction a denial of due process" and resulted in prejudice. *Gillard v. Mitchell*, 445 F.3d 883, 897 (6th Cir. 2006) (quoting *Darden v. Wainwright*, 477 U.S. 168, 181 (1986)).

On habeas review, claims of prosecutorial misconduct are reviewed deferentially. *Darden v. Wainwright*, 477 U.S. 168, 181 (1986). To be cognizable, the misconduct must have "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Id.* (citation omitted). Even if the prosecutor's conduct was improper or even "universally condemned," *id.*, we can provide relief only if the statements were so flagrant as to render the entire

trial fundamentally unfair. Once we find that a statement is improper, four factors are considered in determining whether the impropriety is flagrant: (1) the likelihood that the remarks would mislead the jury or prejudice the accused, (2) whether the remarks were isolated or extensive, (3) whether the remarks were deliberately or accidentally presented to the jury, and (4) whether other evidence against the defendant was substantial. *See Boyle v. Million*, 201 F.3d 711, 717 (6th Cir. 2000). Under [the] AEDPA, this bar is heightened by the deference we give to the . . . [Ohio] Supreme Court's determination of . . . [Petitioner's] prosecutorial-misconduct claims. *See Macias v. Makowski*, 291 F.3d 447, 453-54 (6th Cir. 2002)("If this court were hearing the case on direct appeal, we might have concluded that the prosecutor's comments violated Macias's due process rights. But this case is before us on a petition for a writ of habeas corpus. So the relevant question is not whether the state court's decision was wrong, but whether it was an unreasonable application of clearly established federal law.").

*Bowling v. Parker*, 344 F.3d 487, 512-13 (6th Cir. 2003).

Neither the prosecutor's question nor his labeling of Kaaz as a predator or pedophile in opening statements rendered the trial fundamentally unfair. In deciding the issue as it did, the Twelfth District did not unreasonably apply the relevant Supreme Court precedent. As the court of appeals held, the prosecutor had a good faith basis for asking the question he did and in any event. the objection to it was sustained. The State had apparently recorded a conversation from jail in which Kaaz announced his intention to "game" the system and get probation. Such a statement would have been admissible and damaging to Kaaz's credibility, so it is not difficult to understand why the prosecutor sought to lay a foundation for the recording. In any event the admission was not needed in light of the evidence against Kaaz.

With respect to the statement in opening that the prosecutor intended to prove beyond a reasonable doubt that Kaaz was a "predator" and a "pedophile," that is precisely what the prosecutor did intend to prove and had to prove to obtain a conviction. That is to say, the labels are completely accurate summaries of what had to be proved. While the crimes in question are

not labeled by the legislature as "predation," Kaaz's repeated rape of his stepdaughter for nearly six years certainly is fairly labeled predation in the common usage of the term. Pedophilia's dictionary definition is a "paraphilia in which children are the preferred sexual object."[3] Kaaz's long-term pattern of behavior with J.R. makes the label apt. Had Kaaz been on trial for robbery or drug trafficking, introducing these two terms to label him would have been unfairly prejudicial, akin to introducing evidence of sexual misconduct to prove robbery by showing bad character. But that is not what happened here.

The Twelfth District's decision on Kaaz's prosecutorial misconduct claims is neither contrary to nor an unreasonable application of clearly established Supreme Court precedent. Ground Two should therefore be dismissed.


**Ground Three:  Manifest Weight of the Evidence and Actual Innocence**


In his Third Ground for Relief, Kaaz claims both that his convictions are against the manifest weight of the evidence and that he is actually innocent. In his Memorandum in Support, he phrases the claim thus:  Kaaz's imprisonment for crimes he did not commit, and which he is actually innocent, constitutes a fundamental miscarriage of justice in violation of his federal due process rights under the Fourteenth Amendment (ECF No. 3, PageID 29, citing *Schlup v. Delo*, 513 U.S. 298 (1995), and *Souter v. Jones,* 395 F.3d 577, 599-600 (6th Cir. 2005)).

Having stated the claim in those terms, Kaaz's counsel proceed to argue again the insufficient evidence claim. They discount the physical evidence of Kaaz's sperm on the chair in the garage with Kaaz's claim that he and his spouse had sex in the chair and he masturbated in it

---

[3] Webster's Third New International Dictionary.

(Memorandum, ECF No. 3, PageID 30). We have only Kaaz's word for that; there is no forensic test to show what sexual act Kaaz was engaged in when his sperm was spilled on the chair. The jury heard the competing testimony of Kaaz and his stepdaughter and they believed J.R.

But, Kaaz's counsel say, J.R. is not credible. *Id.* They recount at some length the facts which they say make her incredible. *Id.* at PageID 30-31. But that issue was for the jury to decide, having heard all the discrediting testimony.

Despite having themselves used the term "manifest weight" in pleading the Third Ground for Relief, Kaaz's counsel in their Reply accuse Respondent's counsel of "misconstrue[ing] and dismiss[ing] his claim as one challenging the 'manifest weight' of the evidence." (Reply, ECF No. 10, PageID 1295.) Having made an explicit "manifest weight' claim, counsel cannot fairly complain that that is the claim to which the Assistant Attorney General responded. In any event, a claim that a conviction is against the manifest weight of the evidence does not state a claim under the United States Constitution and is therefore not cognizable in federal habeas corpus. *Johnson v. Havener*, 534 F.2d 1232 (6th Cir. 1986).

What Kaaz apparently is claiming in his Third Ground for Relief is that he should be released because he is actually innocent of the crimes of which he was convicted. However, the Supreme Court has never recognized such a freestanding actual innocence claim. Instead it has held a claim of actual innocence alone is insufficient to warrant habeas relief. *Herrera v. Collins*, 506 U.S. 390 (1993). "[A] claim of actual innocence is not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits." *Herrera v. Collins*, 506 U.S. 390, 404 (1993). Case law in the Sixth Circuit establishes that the Supreme Court of the United States has never recognized a free-standing or substantive actual innocence claim. *Cress v. Palmer*, 484 F.3d 844, 854 (6th Cir. 2007), citing *Zuern v. Tate*, 336 F.3d 478, 482, n.1 (6th Cir. 2003), and *Staley v. Jones*, 239 F.3d 769, 780,

n.12 (6th Cir. 2001).

What the Supreme Court has recognized is a so-called actual innocence gateway by which a habeas petitioner can overcome a procedural default and present the merits of another constitutional claim. *Schlup, supra; McQuiggin v. Perkins*, 569 U.S. 383 (2013). In *Souter v. Jones,* 395 F.3d 577 (6th Cir. 2005), the Sixth Circuit held:

> [I]f a habeas petitioner "presents evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error, the petitioner should be allowed to pass through the gateway and argue the merits of his underlying claims." *Schlup v. Delo,* 513 U.S. 298, 316 (1995)." Thus, the threshold inquiry is whether "new facts raise[] sufficient doubt about [the petitioner's] guilt to undermine confidence in the result of the trial." *Id*. at 317. To establish actual innocence, "a petitioner must show that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Id*. at 327. The Court has noted that "actual innocence means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623, 140 L. Ed. 2d 828, 118 S. Ct. 1604 (1998). "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence -- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial." *Schlup*, 513 U.S. at 324. The Court counseled however, that the actual innocence exception should "remain rare" and "only be applied in the 'extraordinary case.'" *Id.* at 321.

*Souter,* 395 F.3d at 590. The *Souter* exception does not apply when a petitioner's assertion of actual innocence is based solely on his interpretation of the law; new exculpatory evidence is required. *Ross v. Berghuis,* 417 F.3d 552, 555 (6th Cir. 2005).

Kaaz has presented no new evidence of actual innocence at all; he has merely reargued the weight of the evidence presented at trial. Ground Three should therefore be dismissed.

**Ground Four:  Cumulative Error**


In his Fourth Ground for Relief, Kaaz claims the cumulative effect of terrors committed at his trial deprived him of his right to a fair trial and due process guaranteed by the Fourteenth Amendment of the United States Constitution.  The errors Kaaz seeks to accumulate are the ones argued in Grounds One through Three plus (1) admission of other bad act evidence, (2) permitting a social worker to vouch for the credibility of a state witness, and (3) the admission of prejudicial hearsay evidence for the purpose of bolstering the credibility of a state witness (Memorandum in Support, ECF No. 3, PageID 32).

Respondent argues that cumulative error is not a cognizable claim in federal habeas corpus (Return, ECF No. 9, PageID 1288, citing *Lorraine v. Coyle*, 291 F.3d 416 (6th Cir. 2002); *Sheppard v. Bagley*, 657 F.3d 338, 348 (6th Cir. 2011), citing *Moore v. Parker*, 425 F.3d 250, 256 (6th Cir. 2005); *Hoffner v. Bradshaw*, 622 F.3d 487, 513 (6th Cir. 2010); *Moreland v. Bradshaw*, 699 F.3d 908, 931 (6th Cir. 2012).

Kaaz responds by citing *Chambers v. Mississippi*, 410 U.S. 284, 298 (1973), and *Taylor v. Kentucky* 436 U.S. 478 (1978) (Reply, ECF No. 10, PageID 1294).

While cumulative error was a possible claim before the AEDPA was adopted in 1996, the Sixth Circuit has expressly held that "post-AEDPA, that claim is not cognizable."  *Sheppard*, *supra*, citing *Moore*, *supra*.

> Moreland argues that the cumulative effect of counsel's errors should be considered in determining whether he has demonstrated a reasonable probability of a more favorable outcome. However, "post-AEDPA, not even constitutional errors that would not individually support habeas relief can be cumulated to support habeas relief." *Hoffner v. Bradshaw*, 622 F.3d 487, 513 (6th Cir. 2010) (quoting *Moore v. Parker*, 425 F.3d 250, 256 (6th Cir. 2005)).

*Moreland*, 699 F.3d at 931; see also *Ahmed v. Houk*, 2014 U.S. Dist. LEXIS 81971, *332 (S.D. Ohio June 16, 2014).

In *Lorraine v. Coyle*, 291 F.3d 416, (6th Cir. 2002), the court held:

> The Supreme Court has not held that distinct constitutional claims can be cumulated to grant habeas relief. Thus, it cannot be said that the judgment of the Ohio courts is contrary to *Berger*, or to any other Supreme Court decision so as to warrant relief under the AEDPA. *Cf. Walker v. Engle*, 703 F.2d 959, 963 (6th Cir. 1983) (pre-AEDPA case; holding that "errors that might not be so prejudicial as to amount to a deprivation of due process when considered alone, may cumulatively produce a trial setting that is fundamentally unfair").

*Id.* at 447. Cumulative error is not a basis for granting habeas relief in non-capital cases. *Eskridge v. Konteh*, 88 F. App'x 831, 836 (6th Cir. 2004). Cumulative error claims are not cognizable because the Supreme Court has not spoken on the issue. *Williams v. Anderson*, 460 F.3d 789, 816 (6th Cir. 2006), *citing Moore v. Parker*, 425 F.3d 250, 256 (6th Cir. 2005).

Given the binding Sixth Circuit precedent on the question, this Court must find Kaaz's Fourth Ground for Relief is not cognizable and it should therefore be dismissed.

**Conclusion**

Based on the foregoing analysis, it is respectfully recommended that the Petition herein be dismissed with prejudice. Because reasonable jurists would not disagree with this conclusion, it is also recommended that Petitioner be denied a certificate of appealability and that the Court certify to the Sixth Circuit that any appeal would be objectively frivolous and should not be

permitted to proceed *in forma pauperis*.

March 16, 2020.

s/ *Michael R. Merz*
United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal.