# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

**GENE KAAZ,**

      **Petitioner,**

  v.

**CHAE HARRIS, Warden,**
**Lebanon Correctional Institution,**

      **Respondent.**

**Case No. 1:18-cv-865**
**JUDGE DOUGLAS R. COLE**
**Magistrate Judge Merz**

## OPINION AND ORDER

This cause comes before the Court on the Magistrate Judge's March 16, 2020, Report and Recommendation ("R&R", Doc. 13) and Petitioner's Objections to that R&R ("Objs.," Doc. 15). The R&R recommends that the Court dismiss Petitioner Gene Kaaz's Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254 (Doc. 1) with prejudice. (Doc. 13). The R&R also recommends denying Kaaz a Certificate of Appealability. (*Id.*). For the reasons stated more fully below, the Court **OVERRULES** Kaaz's Objections (Doc. 15) and **ADOPTS** the R&R (Doc. 13) in full. The Court thus **DISMISSES** Kaaz's petition (Doc. 1) **WITH PREJUDICE**. Because reasonable jurists would not disagree with this conclusion, the Court also **DENIES** Kaaz's request for a Certificate of Appealability (Doc. 15). The Court further **CERTIFIES** that any appeal of this Opinion and Order would be objectively frivolous and, therefore, **DENIES** Kaaz permission to proceed in forma pauperis.

# PROCEDURAL HISTORY

A. **State Court Proceedings**

In June 2015, a Clinton County grand jury indicted Kaaz on fourteen counts:

1. Four counts of rape, in violation of Ohio Revised Code § 2907.02(A)(1)(b) (Counts 1–4);
2. One count of rape, in violation of Ohio Revised Code § 2907.02(A)(2) (Count 11);
3. Three counts of sexual battery, in violation of Ohio Revised Code § 2907.03(A)(5) (Counts 5, 8, and 12);
4. Three counts of unlawful sexual conduct with a minor, in violation of Ohio Revised Code § 2907.04(A) (Counts 6, 9, and 13); and
5. Three counts of importuning, in violation of Ohio Revised Code § 2907.07(B)(1) (Counts 7, 10, and 14).

(Indictment, Doc. 8, #57–64). A jury found Kaaz guilty on all counts. (*Id.* at #76–78). The trial court sentenced Kaaz to an aggregate term of thirty years to life in prison. (*Id.* at #86–91).

Kaaz appealed his conviction to the Ohio Twelfth District Court of Appeals ("Twelfth District"). (*Id.* at #106). That court affirmed. *State v. Kaaz*, 2017-Ohio-5669 (Ohio Ct. App. July 3, 2017). The Ohio Supreme Court declined jurisdiction. *State v. Kaaz*, 92 N.E.3d 878 (Ohio 2018).

B. **Kaaz's Habeas Petition**

Kaaz launched the instant proceedings on December 6, 2018, by petitioning this Court for habeas corpus relief. (Doc. 1). On the same day, Kaaz filed a brief in support of his petition assisted by counsel. (Doc. 3). That brief sets out four grounds for relief. First, Kaaz believes that the state failed to present evidence based on "distinct acts for each count" and relied on "inferences and estimates" as evidence. (*Id.* at #24). Because he alleges that there was no specific testimony at trial involving

many of his counts, Kaaz believes that his convictions were supported by insufficient evidence. Thus, he says, his sentences based on those convictions violate due process. (*Id.* at #25). Second, Kaaz argues that the prosecutor (1) referring to him as a "predator" and a "pedophile," and (2) referring to a potential plea agreement while at trial, constitutes prosecutorial misconduct and deprived Kaaz of his right to a fair trial. (*Id.* at #26–29). Third, Kaaz argues that his convictions are "contrary to the manifest weight of the evidence" (Doc. 1, #8) and that he is actually innocent of all charges (Doc. 3, #29). And finally, he argues that, given the cumulative effect of all the errors he claims, the State denied him his constitutional rights to a fair trial and to due process. (*Id.* at #31).

**C.    The R&R**

The Magistrate Judge has since issued the R&R. (Doc. 13). The R&R recommends that the Court reject all Kaaz's proposed grounds for relief. (*Id.*). To start, the Magistrate Judge recommends rejecting Kaaz's first claim—that the evidence underlying his convictions was insufficient. (*Id.* at #1320). For one, the Magistrate Judge believes that the evidence and the indictment were sufficient to meet the standards set out in *Jackson v. Virginia*, 443 U.S. 307 (1979), and *In re Winship*, 397 U.S. 358 (1970). (*Id.*). On that front, the R&R incorporated the Twelfth District's summary of the trial testimony from the relevant parties as follows:

    1.  Child Protection Unit Caseworker

> After reviewing the record, we find that Kaaz's convictions are all supported by sufficient evidence and were not otherwise rendered against the manifest weight of the evidence. During Kaaz's trial, the state presented testimony from several witnesses. The first was an

3

investigative caseworker with the Clinton County Department of Job and Family Services, Child Protection Unit. The caseworker testified that he investigated an allegation that Kaaz was allowing children to smoke marijuana and drink alcohol, and providing them with such. When Kaaz's wife admitted that there was marijuana in the home, the caseworker continued his investigation. As part of the investigation, the caseworker interviewed J.R.

J.R. confirmed that she consumed alcohol and marijuana provided to her by Kaaz. J.R., who was confined in a detention center at the time of her interview, admitted that she had been drinking from a young age. The caseworker learned that J.R. had been in trouble for unruliness and kicking a police car, and that she engaged in self-harm through cutting herself. J.R. became more comfortable with the caseworker during their discussion, and ultimately shared that Kaaz had sexually abused her. The caseworker scheduled a follow-up interview with J.R., and contacted police regarding the allegations.

During the follow-up interview with the caseworker and his supervisor, J.R. provided additional information regarding the sexual abuse she suffered from Kaaz. J.R. told the caseworker that the sexual abuse, which included vaginal intercourse, occurred on the chair in Kaaz's garage. J.R. also told the caseworker and supervisor that Kaaz would sometimes "pull out and ejaculate on the chair" or ejaculate inside of her if she was menstruating at the time. The caseworker and his supervisor gave this information to police.

2. Child Protection Unit Supervisor

The state next presented testimony from the caseworker's supervisor, who is the investigative supervisor of the Child Protection Unit. The supervisor testified that when she and the caseworker interviewed J.R., J.R. indicated that she suffered sexual abuse at the hands of Kaaz since the age of nine. The sexual abuse would occur in the garage, on Kaaz's bed, and in Kaaz's bathroom. The supervisor then testified that she and the caseworker reacted to J.R.'s statement by informing police, specific to the sexual abuse occurring on the chair in the garage, for investigatory purposes.

The supervisor also testified that she interviewed Kaaz, and that he denied giving J.R. alcohol or marijuana, but did state that he had lain in bed with J.R. However, Kaaz told the supervisor that nothing sexual occurred between himself and J.R. and that J.R. was a troubled child. When the supervisor specifically advised Kaaz of the allegations J.R.

4

made, Kaaz "advised that he didn't want to talk about that any longer." The supervisor testified that when she asked Kaaz if there would be any reason his and J.R.'s DNA would be found on the chair in the garage, "his eyes got bigger. He sat back further and advised that he no longer wanted to talk, he wanted an attorney."

### 3. Detective

The state also presented testimony from a Wilmington Police Department detective who was contacted by the supervisor and caseworker regarding J.R.'s allegations of sexual abuse against Kaaz. The detective testified that once he was given information about the chair in Kaaz's garage, he obtained a search warrant and seized the chair. The detective described the chair as "nasty," and "dirty." Together with his supervisor, the detective moved the chair to the police station's evidence room where it was later analyzed by a special agent of the Ohio Bureau of Criminal Investigations ("BCI"). The detective testified that after the special agent found the presence of seminal fluid and other stains on the chair, he secured another search warrant to obtain DNA samples from Kaaz and the victim, and that police collected the samples from both.

### 4. BCI Agent

The state next presented testimony from the BCI agent who took DNA samples from the chair. The agent testified that he performed a forensic sweep on the chair, and that he employed a black light to determine if the chair contained saliva, urine, or semen. When the light indicated several stains, the agent cut the fabric on the chair and did a preliminary test on the stained areas, as well as the chair's inside cushion. The preliminary tests indicated that the stains on the chair and the cushion contained seminal fluid. The agent then sent the samples to the laboratory for DNA testing.

### 5. Forensic Scientists

The state called multiple BCI forensic scientists, who testified about testing the samples. The scientists confirmed that the samples tested positive for semen, and that DNA found on the chair belonged to Kaaz and J.R.

### 6. Mayerson Forensic Interviewer

The state then called a social worker and forensic interviewer who is employed at the Mayerson Center for Safe and Healthy Children. The interviewer testified that her role at the Center is to "assess if something has happened to a child or if they have witnessed significant violence. Then my role is to assess the need for medical care which includes like physical medical care, but also mental health care." The interviewer testified that when she spoke to J.R., J.R. provided "a lot of detail" regarding Kaaz's sexual abuse. Based on the information regarding the sexual abuse, the interviewer determined that J.R. needed a medical consultation as well as ongoing mental health therapy.

### 7. J.R.'s Brother

The state then began presenting evidence from J.R.'s family about Kaaz and his actions in the years leading up to the sexual abuse allegations. In this regard, J.R.'s brother was the first to testify. He disclosed that Kaaz allowed him to drink alcohol when he was as young as 12, and that he and Kaaz drank alcohol together on multiple occasions. J.R.'s brother also testified that Kaaz began giving him marijuana in seventh grade, and that Kaaz provided him marijuana on multiple occasions. According to J.R.'s brother, Kaaz drank heavily, and when drunk, he would make "dirty comments," be "more touchy," and act "perverted * * * he would talk about parts of a girl or a guy." Kaaz also showed nude photographs to J.R.'s brother.

J.R.'s brother testified that he noticed that Kaaz was more "touchy feely" with J.R. than he was with the other siblings, and that Kaaz would lie with J.R. on the couch, on his bed, or go out to the garage with J.R. Kaaz would also massage J.R. while she was sitting on the couch, and J.R.'s brother saw Kaaz and J.R. in Kaaz's bed together. J.R.'s brother testified that he would find Kaaz and J.R. together in bed at least once a week, and that Kaaz and J.R. would spend hours at a time in the garage with the door closed and locked. Kaaz also told J.R.'s brother to "go away" when Kaaz wanted to spend time alone in the garage with J.R.

J.R.'s brother testified that J.R. confided in him and their older sister that Kaaz had "sexual conduct" with her and that she felt that the conduct was inappropriate but did not know how to stop it. J.R. told her brother that the sexual abuse had started when she was nine years old. J.R.'s brother testified his reaction to what J.R. told him was to be "scared and threatened," and thus he did not tell anyone until much later.

6

### 8. J.R.

J.R. then testified about the sexual activity that had taken place over the last several years. J.R. testified that when she was younger, around eight or nine years old, she felt ill and lay in Kaaz's bed to be cared for. Kaaz gave her whiskey to drink and subsequently kissed her. Kaaz then put his penis in J.R.'s mouth and later put his mouth on her vagina. J.R. testified that she ran into the bathroom and vomited after Kaaz finished. When J.R. was ten years old, Kaaz was giving her beer, and by 11, he was giving her marijuana.

J.R. testified that Kaaz's demeanor would change often, and that alcohol was often a part of her sexual abuse. Kaaz would ask J.R. to massage him, and then take her to the garage where he would engage in vaginal intercourse with her after giving her shots of alcohol to drink. J.R. also testified that Kaaz would engage in oral and anal sex with her. The sexual conduct would occur more than once a week, and Kaaz never went more than a month without engaging in sexual conduct with J.R. J.R. also confirmed her brother's testimony regarding his seeing Kaaz and her together in bed, and testified that before her brother came to the door, she and Kaaz had intercourse.

J.R. also testified that when she would tell Kaaz not to touch her, he would tell her that he could make her feel better, that she acted out when she did not have "it," and that they could make each other feel good. Kaaz also told J.R. not to tell anyone about the sexual conduct or they would both get into trouble. However, J.R. did tell her sister and brother, just as her brother testified to earlier in the trial.

### 9. J.R.'s Older Sister

J.R., who is the youngest of the four children, had two sisters. The older sister testified that Kaaz began providing her alcohol when she was 11 or 12, and that she would get drunk on the alcohol Kaaz provided her. Kaaz also provide her marijuana, which they smoked together. J.R.'s sister also testified that Kaaz would talk to her about sexual intercourse, specifically as to what positions she should use with her partners. Kaaz also showed J.R.'s sister pictures of genitals and described what areas to touch for pleasure. Kaaz also demonstrated sexual positions with J.R.'s sister by grabbing her hips and showing her how to move on top of him.

> J.R.'s sister also testified that when she and Kaaz were talking about oral sex, Kaaz licked her bare leg on her inner thigh. Kaaz also kissed her on the lips while lying on the floor with her. He also kissed her on the back of her ear, moving down her neck and across the front of her upper chest. J.R.'s sister later testified that one night, she woke up and Kaaz was trying to put his hand up her shirt. J.R.'s sister confirmed during her testimony that J.R. told her and their brother about Kaaz's sexual abuse. J.R. also told her sister that she and Kaaz had sexual intercourse.
>
> ### 10. J.R.'s Other Sister
>
> The younger of J.R.'s sisters testified that Kaaz offered her alcohol and marijuana and pressured her into using marijuana with him. He also showed her images of nude women, which the sister found "disgusting." The sister also testified that she saw Kaaz and J.R. go to the garage together, "a couple times a week," and that the garage door was then shut and locked. Because of what occurred in the household, the sister testified that she would not go into the garage herself.
>
> ### 11. Kaaz
>
> Kaaz testified in his own defense, and denied any sexual conduct with J.R. On cross-examination, he denied every allegation J.R. and her siblings testified to, including providing marijuana for the children, touching any of them inappropriately, or having any sexual contact with them. Kaaz indicated that the children's testimony was fabricated and that the children were "liars."
>
> ### 12. Kaaz's Son
>
> Kaaz's son from a previous relationship also testified in his defense. The son testified that he had never seen any sexual contact between Kaaz and J.R. However, Kaaz's son also testified that he no longer lived with Kaaz because Kaaz gave him alcohol and marijuana when he was in the fifth grade, and his mother then made him reside with her.

(R&R, Doc. 13, #1312–17 (quoting *Kaaz*, 2017-Ohio-5669 at *2–5)). The Magistrate Judge concludes this constituted sufficient evidence to support the convictions. And further, the Magistrate Judge believes that the Twelfth District did not unreasonably apply Supreme Court authority. (*Id.* at #1320). Therefore, the R&R determined that

8

the Twelfth District's interpretation is entitled to deference under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which instructs the Court to defer to state court decisions in such cases. (*Id.*).

The R&R next recommends rejecting Kaaz's claim that the prosecutor committed prosecutorial misconduct by (1) referring to him as a "predator" and a "pedophile," and (2) referring to a possible plea deal during the trial. (Doc. 13, #1325). This is largely because, in order to succeed on that claim, Kaaz would have to show that the misconduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974); *see also Gillard v. Mitchell*, 445 F.3d 883, 897 (6th Cir. 2006). And in the Magistrate Judge's view, the prosecutor's actions, while perhaps not ideal, did not render the trial fatally unfair. (Doc 13, #1324).

Third, the R&R recommends that the Court reject Kaaz's claims that his conviction was against the manifest weight of the evidence and that he is actually innocent. (*Id.* at #1327). The Magistrate Judge bases this recommendation largely on Kaaz's use of these claims to recast his earlier insufficient-evidence claims as two new claims—claims that are not cognizable forms of relief under existing law. (*Id.* at #1326–27). This, the R&R sets out, is because neither manifest weight of the evidence nor actual innocence are constitutional claims upon which relief grounded in habeas corpus can be granted. (*Id.*). *See Herrera v. Collins*, 506 U.S. 390, 404 (1993) (manifest

9

weight of the evidence); *see also Cress v. Palmer*, 484 F.3d 844, 854 (6th Cir. 2007) (actual innocence).

The R&R then addresses Kaaz's final claim, cumulative error. (Doc. 13, #1328). The R&R points out that, following AEDPA, "that claim is not cognizable." (*Id.*). *Sheppard v. Bagley*, 657 F.3d 338, 348 (6th Cir. 2011). So it recommends rejecting that claim. (Doc. 13, #1329). The R&R concludes by recommending that the Court deny Kaaz a certificate of appealability. (*Id.* at #1329–30).

**D.  Kaaz's Objections to the R&R**

Kaaz objected to the R&R on each issue. (Doc. 15). On his sufficiency of the evidence claim, Kaaz restates his belief that J.R.'s evidence was too "vague and imprecise" to satisfy the requirements of *Jackson* and *In re Winship*. (*Id.* at #1339). He directed this objection, however, only to Counts 1–10, and did not object to the R&R's determination on this issue as to Counts 11–14. As to his prosecutorial misconduct claim, he calls being labeled a pedophile and a predator "reprehensible" and continues to criticize the prosecutor's reference to a plea deal at trial. (*Id.* at #1341–42). He combines his objections to his manifest weight of the evidence, actual innocence, and cumulative error claims, disagreeing with the R&R on each conclusion but failing to offer any reason why, contrary to the R&R's view, his claims are cognizable. (*Id.* at #1343). Kaaz concludes his objections by requesting a certificate of appealability should his objections be overruled. (*Id.* at #1343–44).

10

## LAW AND ANALYSIS

The Court reviews an R&R de novo after a party timely objects. Fed. R. Civ. P. 72(b)(3). Such review applies only to "any portion to which a proper objection was made." *Richards v. Colvin*, No. 2:12-cv-748, 2013 WL 5487045, at *1 (S.D. Ohio Sept. 30, 2013).

Faced with a proper objection, "[t]he district court 'may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions.'" *Id.* (quoting Fed. R. Civ. P. 72(b)(3)). By contrast, a purely general objection "has the same effect[] as would a failure to object." *Howard v. Sec'y of Health & Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991). Thus, a litigant must identify each issue in the R&R to which they object with sufficient clarity that the Court can identify it or else that issue is deemed forfeited. *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995) ("The objections must be clear enough to enable the district court to discern those issues that are dispositive and contentious."). Here, Kaaz has objected to each of the R&R's recommendations. The Court reviews accordingly.

### A. Sufficiency of the Evidence

Kaaz first objects to the R&R's recommendation that this Court dismiss his insufficient evidence claim, at least with regard to Counts 1–10. As to those counts, Kaaz asserts, the evidence underlying his convictions was insufficient in that the government relied solely on "vague and unspecific allegations." (Doc. 15, #1339). An insufficient evidence claim is grounded in the Due Process Clause of the Fourteenth

Amendment. U.S. Const. amend. XIV; *see Jackson*, 443 U.S. at 316. And for a conviction to be constitutionally sound, the government must prove each element of the crime charged beyond a reasonable doubt. *In re Winship*, 397 U.S. at 364; *see also State v. Jenks*, 574 N.E.2d 492, 503 (Ohio 1991) (recognizing this rule under Ohio law).

Granting habeas relief on an insufficient evidence claim, then, is only appropriate where "the court finds, after viewing the evidence in the light most favorable to the prosecution, that no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Parker v. Renico*, 506 F.3d 444, 448 (6th Cir. 2007); *see also Jackson*, 443 U.S. at 318–19.

In directly quoting the Twelfth District, the R&R capably sets out the requisite evidence for each count. And on de novo review, the Court will strive to do so as well. Here, the charges in Counts 1–10 all involve claims of sexual conduct (or solicitation of such conduct (Counts 7 and 10)) that is unlawful due either to: (1) the victim's age (Counts 1–4), (2) the respective ages of the victim and perpetrator (Counts 6, 7, 9, and 10), or (3) the relationship between the victim and perpetrator (Counts 5 and 8). The essential elements, then, are the sexual conduct (or solicitation of such conduct) and the additional qualifier (age or relationship).

Start with the additional qualifiers. Here, it is undisputed that J.R. was born on September 4, 2000, and thus was under thirteen until September 4, 2013 (Counts 1–4). And it is undisputed that, at all relevant times, Kaaz was more than eighteen years old. Moreover, during the years charged in Counts 6 and 9, J.R. was between

12

the ages of 13 and 16, and more than ten years younger than Kaaz. *See* O.R.C. § 2907.04. And during the years charged in Counts 7 and 10, J.R. was between the ages of 13 and 16, and more than four years younger than Kaaz. *See* O.R.C. § 2907.07(B)(1). It is also undisputed that Kaaz was J.R.'s stepparent (Counts 5 and 8). *See* O.R.C. § 2907.03(A)(5). That covers the age or status-based component of each of Counts 1–10.

While that much is undisputed, Kaaz does dispute whether (1) he engaged in any sexual conduct with J.R. at any relevant time between September 4, 2009, and March 1, 2015, and (2) if so, whether the indictment set forth a sufficiently definite statement of the time on which the conduct underlying each count occurred. (*See* Doc. 13, #1318–19). As to whether any sexual conduct occurred, Kaaz says no. (*See* Petition, Doc. 1, #8 (setting out his belief that he is "actually innocent" and imprisoned "for crimes he did not commit")). And he claims that the only evidence against him consists of "guesses, speculations, and estimates[.]" (Objs., Doc. 15, #1339).

The jury viewed the evidence at hand, however, and it found J.R. and her supporting witnesses to be more believable than Kaaz on this issue. A rational trier of fact could reach this result without difficulty. Indeed, as noted above, J.R. testified that she was raped weekly or bi-weekly throughout the entire relevant timeframe set forth in the indictment, and that the time lapse between separate instances of the charged conduct with Kaaz "never went more than a month." (Doc. 8, #181). On this, a rational trier of fact could conclude that illegal acts occurred.

Perhaps recognizing this, Kaaz attempts to capitalize on the fact that J.R. could not identify precise *dates* on which the sexual conduct occurred. But each relevant charge in the indictment refers to the respective conduct happening once in an entire year. Even if the acts occurred only monthly, that is more than enough to show that the unlawful conduct occurred during the year specified in a given count. True enough, the lack of specificity as to the date may give rise to due process concerns (addressed immediately below). But assuming the one-year period for each count is sufficiently specific, then J.R.'s testimony, if credited, shows that the unlawful conduct occurred during the time period each count specified. That covers all of the required elements. And Kaaz offers no case law to the contrary.

To be sure, Kaaz cites *Valentine v. Konteh*, 395 F.3d 626 (6th Cir. 2005), but that case does not support his sufficiency of the evidence claims. Indeed, Kaaz seems to recognize as much. In previous filings, Kaaz appeared to maintain that *Valentine* involved sufficiency of the evidence. (*See*, *e.g.*, Doc. 3, #25). But after the R&R pointed out that *Valentine* involved due process (rather than sufficiency of the evidence), Kaaz switched to arguing that his due process rights were violated. (*See* Doc. 15, #1339). Due process, however, is a separate issue from sufficiency, and thus *Valentine* does not help on Kaaz's sufficiency argument.

So, what about notice and due process? True, *Valentine* reiterates that a defendant must have sufficient notice of the alleged crime so that he can defend himself. 395 F.3d at 637. And only specifying the *year* in which the alleged crime occurred perhaps could raise due process concerns. But Kaaz did not raise any issue

14

of notice at trial or appear to have trouble identifying the conduct with which he was charged. Instead, Kaaz's chief overall claim is that *no* sexual conduct occurred. That's a problem for his notice argument, though, because when a defendant "denie[s] any sexual conduct with the child victim, the lack of specificity in the indictment as to specific dates or places of the alleged abuse does not result in prejudice to the defense." *Coles v. Smith*, 577 F. App'x 502, 508 (6th Cir. 2014). And *Valentine* itself upheld an indictment containing date ranges of almost a year. 395 F.3d at 638–39; *see also Hunter v. New Mexico*, 916 F.2d 595, 600 (10th Cir. 1990) (upholding an indictment on similar charges when the conduct was alleged to have occurred within a specified three-year period).

In short, J.R. testified as to Kaaz's behavior for each count, noting that Kaaz "never went more than a month" without harming her. (Doc. 8, #181). And again, unlike in *Valentine*, J.R.'s siblings both verified her statements and offered their own corroborating testimony. Forensic evidence further confirmed Kaaz's sperm and J.R.'s DNA together on a chair in the garage. If anything, the indictment reflects Kaaz only being charged one time each year for crimes that the evidence revealed likely occurred repeatedly throughout the year. The evidence here meets the "sufficiency requirements" of *Jackson* and *In re Winship*. (Doc. 13, #1320). And Kaaz's newfound recharacterization of his evidentiary concerns as a due process-based notice argument does nothing to advance his cause.

15

## B. Prosecutorial Misconduct

Second, Kaaz objects to the R&R's recommendation that the Court reject his prosecutorial misconduct argument. Kaaz argues that the prosecutor labeling him a pedophile and a predator and implying that he would take a plea deal constitutes prosecutorial misconduct. (Doc. 15, #1340–42).

The Twelfth District decided this claim on the merits. *Kaaz*, 2017-Ohio-5669 at *8–10. So the question here is whether that court's decision was contrary to or an unreasonable application of Supreme Court precedent. 28 U.S.C. § 2254(d)(1). And such claims are reviewed "deferentially." *Gillard*, 445 F.3d at 897. As to the prosecutor's conduct, even prosecutorial comments worthy of universal condemnation do not suffice; the trial must be "so infected … with unfairness as to make the resulting conviction a denial of due process." *Darden*, 477 U.S. at 181 (citation omitted); *see also Gillard*, 445 F.3d at 897.

The prosecutor calling Kaaz a predator and a pedophile did not render the trial fundamentally unfair. Kaaz believes it was "reprehensible" for the government to label him as it did. (Doc. 15, #1341). But that is not the standard. Under *Darden*, the trial had to be so infected with unfairness as to have denied Kaaz due process. And the Court is unclear how that standard possibly could be met here. After all, the State charged Kaaz for conduct that, if true, would mean that he was a predator and a pedophile. It does not strike the Court as odd that the State would contend that those labels apply to him.

Nor did the prosecutor referring to Kaaz's willingness to take a plea deal render the trial unfair. For one, the prosecution explained its reasoning for the

statement and put it in the proper context of a larger conversation—a conversation in which Kaaz expressed his desire to beat the system and avoid serving any time in jail. While the prosecutor's statement may well have been inappropriate, the trial court rightly sustained an objection to the statement, and the jury was instructed that such statements should not be considered as evidence. *See Kaaz*, 2017-Ohio-5669 at *8. Given these facts, the Court cannot say that the trial was infected with unfairness overall, or at least that the Twelfth District's decision to that effect contravened Supreme Court precedent. Kaaz's second claim fails.

## C. Manifest Weight of the Evidence, Actual Innocence, and Cumulative Error

Kaaz objects to the R&R's conclusions on his third and fourth claims together. (Doc. 15, #1342). His arguments in support of these two claims, however, consist largely of recasting his arguments in support of his earlier claims. He objects to the R&R's recommendation that his manifest weight of the evidence and actual innocence claims should fail. (*Id.* at #1343). But a manifest weight of the evidence argument is not a constitutional claim. *Johnson v. Havener*, 534 F.2d 1232, 1234 (6th Cir. 1976). Kaaz attempts to circumvent this by avoiding use of that exact language in his objections, while reiterating that the Court should consider "the entire record." (Doc. 15, #1343). The Court is not persuaded and declines to fashion a new form of relief that the Sixth Circuit has rejected.

Nor does Kaaz's actual innocence argument persuade the Court. As the R&R correctly notes, the Supreme Court has never recognized a standalone actual innocence claim. To the contrary, the Supreme Court has held that no such

17

constitutional claim exists. *Herrera*, 506 U.S. at 404; *see also Cress*, 484 F.3d at 854 (citation omitted). Rather, actual innocence is a gateway for considering *other* constitutional claims. *Herrera*, 506 U.S. at 404. And, in any event, "'actual innocence' means factual innocence," and Kaaz has introduced no new evidence in support of his claims that he is factually innocent. *Bousley v. United States*, 523 U.S. 614, 623 (1998). Instead, he merely restates his argument that the jury should not have believed J.R. and her other supporting witnesses. (Doc. 15, #1343). That is not enough.

As part of the above objection, Kaaz also seems to object to the R&R's recommendation that his cumulative error claim be denied as not cognizable. (*Id.*). But the Sixth Circuit no longer recognizes cumulative error claims as a basis for habeas relief post-AEDPA. *Sheppard*, 657 F.3d at 348. So the Court's analysis of that claim starts and ends there. Both his third and fourth grounds for relief fail.

## CONCLUSION

For the reasons set forth above, the Court **OVERRULES** Kaaz's Objections to the R&R (Doc. 15) and **ADOPTS** the R&R (Doc. 13) in full. The Court **DISMISSES** Kaaz's petition (Doc. 1) **WITH PREJUDICE**. And the Court **DIRECTS** the Clerk enter judgment and **TERMINATE** this matter on the Court's docket. Because reasonable jurists would not disagree with this conclusion, the Court also **DENIES** Kaaz's request for a Certificate of Appealability (Doc. 15). The Court further **CERTIFIES** that any appeal of this Opinion and Order would be objectively frivolous and, therefore, **DENIES** Kaaz permission to proceed in forma pauperis.

18

**SO ORDERED.**

October 26, 2022
**DATE**

**DOUGLAS R. COLE
UNITED STATES DISTRICT JUDGE**